UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAIRO RODRIGUEZ, et ano.,

           Plaintiffs,

-against-          06 Civ. 9438 (LAK)

THE CITY OF NEW YORK, et ano.,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Nicole Marie Bellina
Andrew B. Stoll
STOLL, GLICKMAN & BELLINA, LLP
*Attorneys for Plaintiffs*

Mitchell Garber
WORTH, LONGWORTH & LONDON, LLP
*Attorney for Defendant Matthew Weinstein*

Anna Le Nguyen
Assistant Corporation Counsel
MICHAEL A. CARDOZO
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorneys for Defendant City of New York*

LEWIS A. KAPLAN, *District Judge.*

This action arises from an altercation between plaintiffs Jairo and Luis Rodriguez[1] and defendant Matthew Weinstein ("Weinstein"), a New York City police officer who was off duty at the time of the incident. Following the altercation, plaintiffs were arrested by New York City police officers and charged with assault and harassment, charges that ultimately were dropped. Plaintiffs brought this action against Weinstein, the City of New York, New York City Police Commissioner Raymond Kelly, Inspector Richard Bruno, Police Officer Ioannis Rizos, and five unnamed NYPD officers, seeking recovery under (1) 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution, (2) analogous state law claims, and (3) state law claims of assault, battery, and constitutional tort.[2] Weinstein cross-claimed against the City for indemnification.[3]

Plaintiffs dismissed all claims against Kelly, Bruno, and Rizos[4] and settled their claims against the City.[5] The City then moved for summary judgment dismissing Weinstein's cross-claims. The Court denied the City's motion to the extent that Weinstein sought indemnification for

---

[1] A third plaintiff, Carlos Rodriguez, withdrew all claims with prejudice. *See* Docket Item 17.

[2] Docket Item 1 ("Cpt.").

[3] Docket Item 10.

[4] Docket Item 13.

[5] Docket Item 19.

defense costs under N.Y. Gen. Mun. Law § 50-k and granted it in all other respects.[6]

Weinstein now moves for summary judgment dismissing the remaining plaintiffs' complaint.

*Facts*

With few exceptions, the parties' versions of the facts sharply conflict. Where they differ, the Court credits the nonmovants' version of events.

At approximately 8:00 a.m. on August 6, 2005, Weinstein arrived at the running track at College of Staten Island, where he observed a small group playing soccer in the field area in the middle of the oval.[7] Weinstein set his keys, towel, and water bottle on the bleachers near the track and began to run.[8] He had been running for about ten minutes when the soccer game concluded and the players walked over to the bleachers, where Jairo Rodriguez ("Jairo") mistakenly drank from Weinstein's water bottle.[9] When Jairo realized that the water bottle was not his, he placed it back on the bleachers, and the players started walking toward their cars.[10]

Upon observing this, Weinstein ran over to the group, came face-to-face with Luis

---

[6] Docket Item 31.

[7] Stoll Decl. [docket item 35], Ex. A ("Weinstein Dep.") at 10-12.

[8] *Id.* at 12-13.

[9] *Id.* at 14-15; Stoll Decl., Ex. B ("J. Rodriguez Dep.") at 10-13.

[10] J. Rodriguez Dep. 13-14.

Rodriguez ("Luis"), and began screaming and cursing that Luis had drunk Weinstein's water.[11] Luis told Weinstein that, if he had, it was by mistake and that Weinstein should calm down.[12] He then put his hands on Weinstein's chest and pushed him.[13] Weinstein pushed Luis's hands down and stepped forward.[14] Jairo, who was behind Luis and about three or four feet from Weinstein, then stepped between the two men, said "Listen, step back," placed his hands on Weinstein's chest, and pushed him away.[15]

Alhaji Wurie, a NYPD cadet who also was running at the track, observed the altercation and ran over to intervene.[16] As Wurie was restraining Weinstein, Weinstein stated that he wanted to go to the bleachers to get his keys.[17] Luis walked over, picked up Weinstein's keys,

---

[11] *Id.* at 14, 17-18; Weinstein Dep. 16.

[12] J. Rodriguez Dep. 15, 18; Stoll Decl., Ex. C ("L. Rodriguez Dep.") at 12.

[13] L. Rodriguez Dep. 14-15. Weinstein asserts that Luis punched him in the face, an assertion that the Court disregards because plaintiffs dispute it. Weinstein contends also that he identified himself as a "cop" at this time, hoping to diffuse the situation. Weinstein Dep. 21. Jairo did not hear Weinstein identify himself as a cop, *see* J. Rodriguez Dep. 31, but plaintiffs do not contest explicitly Weinstein's contention.

[14] L. Rodriguez Dep. 15.

[15] J. Rodriguez Dep. 18-19; L. Rodriguez Dep. 16. Jairo and Luis present conflicting testimony as to who pushed Weinstein first. This disparity is irrelevant, however, because each admits having pushed Weinstein at some point during the altercation.

[16] J. Rodriguez Dep. 14, 21-22. Wurie did not identify himself as a cadet to plaintiffs. L. Rodriguez Dep. 19-20.

[17] J. Rodriguez Dep. 24.

5

and threw them behind the bleachers.[18] Luis, Jairo, and the others then walked toward their cars in the parking lot.[19] Weinstein, whose car also was parked in the lot, retrieved his keys and walked quickly to his car.[20] He reached into a gym bag on the back seat, pulled out a handgun, his police shield, and a cell phone, and said "I'm a police officer, now what?"[21]

Plaintiffs continued moving toward their cars, so Weinstein waved his gun at Luis and told him to stop.[22] Luis stopped momentarily, although neither he nor Jairo believed that Weinstein was attempting to arrest them.[23] Plaintiffs and the others then got into two cars and left while Weinstein called 911 to report that he had been assaulted.[24]

When NYPD officers arrived at the track, Weinstein reported the incident, and Wurie reported that he had been a witness.[25] Other officers located plaintiffs on the street outside their

---

[18] *Id*. at 24-26; L. Rodriguez Dep. 20-24.

[19] J. Rodriguez Dep. 26-27; L. Rodriguez Dep. 25.

[20] J. Rodriguez Dep. 26, 29.

[21] *Id.* at 29-35; L. Rodriguez Dep. 25-26, 30; Weinstein Dep. 27-28. The handgun was not Weinstein's NYPD-issued firearm. Weinstein Dep. 27.

[22] L. Rodriguez Dep. 29; J. Rodriguez Dep. 56.

[23] L. Rodriguez Dep. 29-30; J. Rodriguez Dep. 31, 37.

[24] J. Rodriguez Dep. 36-37; L. Rodriguez Dep. 30-32; Weinstein Dep. 28-31. During the call, Weinstein (1) identified himself as an off-duty officer who had been assaulted and (2) gave a description of the individuals and vehicles, including license plate numbers. Weinstein Dep. 28-31.

[25] Weinstein Dep. 32-35; Stoll Decl., Ex. G ("Wurie Aff.") ¶ 8.

houses and detained them while Weinstein and Wurie were driven there to identify them.[26] Weinstein identified both plaintiffs specifically as having been involved in the altercation, while Wurie identified them only as having been part of the larger group at the track.[27]

Plaintiffs then were arrested and transported to the 120th precinct for processing, while Weinstein was transported back to the track to retrieve his car.[28] Weinstein subsequently had one interaction with plaintiffs while they were in a holding cell.[29] He had no further interactions with the arresting officer but later signed supporting depositions for the Richmond County district attorney.[30] The charges ultimately were dismissed, pursuant to N.Y. Crim. Proc. Law § 30.30.[31]

*Discussion*

Summary judgment is appropriate if there is no genuine issue of material fact and the

---

[26] J. Rodriguez Dep. 42-44; L. Rodriguez Dep. 37.

[27] J. Rodriguez Dep. 44; *see* Stoll Decl., Ex. D at 25-27.

[28] Weinstein Dep. 20, 43. Although the incident occurred in the 122nd precinct, all arrests on Staten Island are processed through central booking at the 120th. *Id.* at 20, 44-45. Parties arrested in other precincts are held in cells separate from subjects arrested in the 120th. *Id.* at 45.

[29] *See* Stoll Decl., Ex. E.

[30] Weinstein Dep. 53-56, 62-63. Weinstein was on-duty when he signed the depositions. *Id.* at 55-56.

[31] *See* Stoll Decl., Ex. K.

moving party is entitled to judgment as a matter of law.[32] Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.[33] In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.[34]

I.   *Section 1983 Claims*

In order to state a claim under Section 1983, plaintiffs must allege that the conduct complained of (1) was committed by a person acting under color of law and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.[35] A police officer acting "'in the ambit of [his or her] personal pursuits'" does not act under color of law, but there is no clear line between when an officer acts in a personal capacity or an official capacity.[36] An officer may act under color of law notwithstanding the fact that he or she is off-duty at the time

---

[32] *E.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000); *see also* Fed. R. Civ. P. 56(c).

[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin At. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001).

[34] *Celotex*, 477 U.S. at 322-23; *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997).

[35] *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). A person acts under color of law when he or she acts under "'pretense of law.'" *Pitchell*, 13 F.3d at 547-48 (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)).

[36] *Id.* at 548 (quoting *Screws*).

of the challenged conduct.[37]

The facts, which generally are undisputed vis-à-vis this issue, present a close question as to whether or not Weinstein acted under color of law. On the one hand, Weinstein was not in uniform at the time of the altercation and did not have in his immediate possession equipment – such as a shield, baton, handcuffs, or radio – that officers typically have. He drove to and from the track in his personal vehicle. When he did display a gun, it was his personal weapon and not his department-issued firearm. On the other hand, Weinstein identified himself as a police officer twice, displayed his police shield, and waved his gun at Luis and ordered him to "stop." The Court, however, need not resolve this question. Even if Weinstein acted under color of law, he did not deprive plaintiffs of any rights protected by the Constitution.

*A.  False Arrest / False Imprisonment*

A Section 1983 claim for false arrest or false imprisonment "is substantially the same as a claim for false arrest [or false imprisonment] under New York law."[38] Under New York law, the elements of false arrest are (1) defendant's intentional, unjustified, and unprivileged confinement of plaintiff and (2) plaintiff's awareness of the confinement.[39] Plaintiffs do not contend that

---

[37] *See Rivera v. La Porte*, 896 F.2d 691, 695-96 (2d Cir. 1990).

[38] *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

[39] *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), *cert. denied* 517 U.S. 1189 (1996); *Broughton v. State of New York*, 37 N.Y.2d 451, 456, *cert. denied sub nom. Schanbarger v. Kellogg*, 423 U.S. 929 (1975). The elements of false arrest and false imprisonment are identical. *Id*.

Weinstein personally arrested or confined them.[40] Rather, their claims are predicated on the theory that Weinstein affirmatively instigated their arrest and confinement by falsely reporting that he had been "assaulted" and thus can be held liable.[41]

Assuming *arguendo* the merits of plaintiffs' argument, it would be sufficient only to establish that Weinstein acted with intent. Plaintiffs must adduce evidence also that would permit a trier of fact to find that the arrest or confinement was not justified or privileged. An arrest is justified or privileged if, *inter alia,* it is based on probable cause, which exists when an officer has "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"[42] An arrest supported by probable cause cannot be the basis of a Section 1983 claim for false arrest or false imprisonment.[43]

Weinstein contends that probable cause to arrest existed for multiple crimes, including third degree assault, second degree harassment, petit larceny, and attempt to commit a

---

[40] In particular, they do not assert that they were arrested when Weinstein waved his gun at them and told them to stop. *See* J. Rodriguez Dep. 37, 54-55 ("I don't think he pulled his gun out to arrest us, no."); L. Rodriguez Dep. 29-30. In fact, plaintiffs ignored that command and proceeded to their cars.

[41] *See King v. Crossland Sav. Bank*, 111 F.3d 251, 256-57 (2d Cir. 1997) ("To prove intent, the defendant must have either: (1) confined or intended to confine plaintiffs, or (2) affirmatively procured or instigated the plaintiff's arrest.").

[42] *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) (quoting *Weyant*, 101 F.3d at 852).

[43] *See Singer*, 63 F.3d at 118 (false arrest); *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985) (false imprisonment).

crime.[44] Plaintiffs respond that Weinstein presents "no evidence of probable cause supported by anything more than [his] own fabricated and misleading accusations."[45] Plaintiffs concede, however, that they each pushed Weinstein during the altercation.[46] Accordingly, even though the Court does not credit, for purposes of this motion, Weinstein's contention that he was punched in the face, the undisputed facts[47] are sufficient to establish probable cause to believe that plaintiffs committed second degree harassment.[48]

It is of no moment that Weinstein reported in his 911 call that he had been "assaulted." Probable cause exists where the objective facts demonstrate that a person has committed some crime, not necessarily the crime upon which the arrest is based.[49] Nor would it

---

[44] Docket Item 23 at 13.

[45] Docket Item 34 at 8.

[46] *See* L. Rodriguez Dep. 14-16; J. Rodriguez Dep. 18-19.

[47] Plaintiffs' Rule 56.1 statement purports to dispute that they pushed Weinstein during the altercation. *See* Docket Item 36 at ¶ 17. Their depositions, however, contain express admissions that each pushed Weinstein. *See* L. Rodriguez Dep. 14-16; J. Rodriguez Dep. 18-19. Indeed, the complaint alleges that Weinstein "was pushed away by one of the plaintiffs." *See* Cpt. ¶ 14.

[48] NY PENAL LAW § 240.26(1) ("A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same"); *accord People v. Bartkow*, 96 N.Y.2d 770, 772 (2001) ("The crux of section 240.26(1) is the element of physical contact: actual, attempted or threatened. Although not rising to the level of an assault causing physical injury . . . , petty forms of offensive touching, such as striking, shoving and kicking, are prohibited when committed with the intent to annoy, harass or alarm the victim.").

[49] *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Jaegly v. Couch*, 439 F.3d 149, 153-54 (2d Cir. 2006).

matter if plaintiffs had not intended to annoy, harass, or alarm Weinstein by pushing him. Weinstein "was not required to make a full investigation into plaintiff[s'] state of mind" prior to reporting the altercation.[50] Once plaintiffs pushed Weinstein, a person of reasonable caution could have believed that plaintiffs had committed a crime. Accordingly, plaintiffs' admissions establish that Weinstein had probable cause to justify their arrests. The false arrest and false imprisonment Section 1983 claims fail.[51]

B. *Malicious Prosecution*

In order to establish a Section 1983 claim for malicious prosecution, plaintiffs must show a violation of their Fourth Amendment rights and establish the elements of malicious prosecution under state law.[52] Under New York law, plaintiffs must make out four elements, viz. that (1) defendant initiated a prosecution against plaintiffs, (2) the matter terminated in plaintiffs' favor, (3) there was no probable cause for the criminal proceeding, and (4) the proceeding was motivated by actual malice.[53]

---

[50] *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). This is true notwithstanding the allegation that Weinstein acted aggressively towards plaintiffs. While it is true that probable cause may not have existed if Weinstein knew that plaintiffs were acting in self-defense or otherwise were justified in their conduct, *see Jocks*, 316 F.3d at 135, it is plaintiffs' burden to argue this point, something they have not done.

[51] Because probable cause existed to arrest plaintiffs for second degree harassment, the Court need not address Weinstein's contention that probable cause existed also for third degree assault, petty larceny, and attempt to commit a crime.

[52] *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).

[53] *See Ricciuti*, 124 F.3d at 130.

Plaintiffs contend that, although Weinstein did not play the active role that typically satisfies the initiation element,[54] he nonetheless initiated the prosecution because his false statements to the Richmond County district attorney served as the catalyst for the criminal proceeding.[55] Even assuming, however, that plaintiffs can establish the initiation element, they must adduce evidence also that would permit a trier of fact to find that the criminal proceeding was not supported by probable cause.

Probable cause in this context "consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty."[56] The existence of probable cause to support the arrests precludes plaintiffs from establishing a malicious prosecution claim unless they can point to facts uncovered after the arrest that negated that probable cause[57] by

---

[54] *See Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000); *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 696 (2d Dept. 1992) ("It has been held that '[t]he mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'") (quoting *Viza v. Town of Greece*, 94 A.D.2d 965, 966 (4th Dept. 1983) (alteration in original)).

[55] *See Rothstein v. Carriere*, 373 F.3d 275, 294 (2d Cir. 2004) ("It is true that a jury may rely upon false statements to law enforcement in determining that a person initiated a prosecution, but it may not do so to the exclusion of other evidence on the issue."). The parties dispute whether (1) Weinstein made false statements and (2) the prosecution was predicated solely on those statements.

[56] *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983).

[57] *See Kinzer v. Jackson*, 316 F.3d 139, 143-44 (2d Cir. 2003); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996); *Oakley v. City of Rochester*, 71 A.D.2d 15, 18 (4th Dept. 1979), *aff'd by Oakley v. City of Rochester*, 51 N.Y.2d 908 (1980).

making apparent the "groundless nature of the charges."[58] Plaintiffs point to no intervening facts that vitiate the probable cause that existed at the time they were arrested. Accordingly, they again fail to demonstrate the deprivation of any constitutional right.

II. *State Law Claims*

Plaintiffs' remaining state law claims are before the Court pursuant to its supplemental jurisdiction.[59] The Court therefore must determine whether it should continue to exercise its supplemental jurisdiction over them notwithstanding the dismissal of the federal, jurisdiction-conferring claims.

A district court has broad discretion to decide whether to exercise its supplemental jurisdiction over state law claims and may decline to do so if it "has dismissed all claims over which it has original jurisdiction."[60] In exercising its discretion, the Court "consider[s] factors such as judicial economy, convenience, fairness, and comity."[61] If the case is "late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims,

---

[58] *Lowth*, 82 F.3d at 571; *see also Callan v. State of New York*, 73 N.Y.2d 731, 732 (1988) (adopting the dissenting opinion in *Callan v. State of New York*, 134 A.D.2d 882, 883-84 (4th Dept. 1987)).

[59] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

[60] 28 U.S.C. § 1367(c)(3); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966).

[61] *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996).

knocking them down with a belated rejection of supplemental jurisdiction may not be fair."[62]

In one respect, the exercise of supplemental jurisdiction is appropriate. For the reasons already stated, plaintiffs cannot prevail on their state law claims of false arrest, false imprisonment, and malicious prosecution – their admissions clearly demonstrate the existence of probable cause.[63] Accordingly, those claims are dismissed on the merits.

The factors weigh against exercising supplemental jurisdiction over plaintiffs' remaining state law claims. Plaintiffs likely have not expended a substantial amount of time, resources, or effort developing their state law claims independent of their federal claims because both are based on the same underlying facts. Nor is the case at such a late stage that it would be unfair to the parties to decline to exercise supplemental jurisdiction at this point. It therefore is reasonable for the Court to decline to exercise its supplemental jurisdiction over plaintiffs' remaining state law claims.

## III. Weinstein's Cross-Claim

The sole remaining matter is Weinstein's cross-claim against the City for indemnification pursuant to N.Y. Gen. Mun. Law § 50-k. As the cross-claim arises under state law,[64]

---

[62] *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (quotation marks and citation omitted).

[63] *See, e.g.*, *Zanghi*, 752 F.2d at 45 ("It is abundantly clear that a finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution.").

[64] *See Mercurio v. City of New York*, 758 F.2d 862, 865 (2d Cir. 1985); *see, e.g.*, *Banks v. Yokemick*, 144 F. Supp. 2d 272, 281-86 (S.D.N.Y. 2001).

the Court similarly must determine whether to exercise its supplemental jurisdiction over it.

Judicial economy and the convenience of the parties will be promoted if the state court determines both Weinstein's liability, if any, for plaintiffs' state law claims, and the extent, if any, to which the City must indemnify Weinstein. It therefore is reasonable for the Court to decline to exercise its supplemental jurisdiction over Weinstein's cross-claim.

*Conclusion*

For the foregoing reasons, Weinstein's motion for summary judgment dismissing the complaint [docket item 20] is granted. Plaintiffs' Section 1983 claims and their state law claims of false arrest, false imprisonment, and malicious prosecution are dismissed on the merits. Plaintiffs' remaining state law claims are dismissed for lack of subject matter jurisdiction. Weinstein's cross-claim against the City for indemnification is dismissed for lack of subject matter jurisdiction. The Clerk shall enter final judgment and close the case.

SO ORDERED.

Dated: February 27, 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)